Good morning, may it please the court. My name is Cameron Blazer and I represent Saul Ramirez-Castillo. I was appointed to represent him on appeal after leaving the Federal Public Defender's Office where I represented him at the trial court. And so, you know, it's the dream of every appellate lawyer to have a case that is at trial clearly reversible. That dream becomes a nightmare when you're the trial counsel below and some of the reason that the case needs to be remanded and retried is because of error on your part. So, I'm here with sort of a dream nightmare scenario before the court. As you know, there are a patchwork of issues present in this case, all of which have to sort of come together to build the quilt that covers me such that I can persuade the court to send the case back to Judge Blott. I'd like to start with the one that I think is the most unusual and that is the Rule 31 issue vis-a-vis the special verdict form and whether we even got a verdict in this case. As this court is aware, it was... You asked for it, didn't you? Yes, sir. I certainly did. And I noted that in... That's what you asked for, didn't you? We got a special verdict form. Yes, sir, we did. And as I noted in, I believe, footnote one of my opening brief, we do not contest that it was improper to use a special verdict form. It was not improper. Nothing wrong with the verdict form? No, sir. There's nothing wrong with a special verdict form. There's nothing wrong with using special interrogatories. And I would suggest that in light of recent Supreme Court precedent, like Align, we're going to see more and more and more of these. And that's one reason that it's really important for this court to set forth what the proper parameters are when a special jury verdict form is used. Does the answering of the questions indicate guilt or innocence? The answering of those questions clearly indicates that the jury found facts that the judge could use to make a finding of law as to guilt. And that's exactly what the judge said he would do prior to issuing his jury instructions. In... Did appellant waive his right to a jury trial? No, Your Honor. And... Do you want us to send it back and just get Judge Black to say, you are guilty? That's a good question. And then give him the same sentence, and that's the end of it? No, Your Honor, because as I said, I think there are a number of other issues. But on this issue, on this issue... If this were the only issue... Even if it's not the only, on this issue, the reason you're arguing it is because you're saying this needs to go back in Judge Black's courtroom for him to say, the jury has now reached some guilt. And I'm now going to give you the identical sentence you just had. It may seem silly, but yes. And here's why. That's what you asked me. You're going to concede that? Don't you want a jury trial? Well, I do want a jury trial, but I'm not going to... Did you have a jury trial? We did, but I'm not going to be disingenuous with the court and suggest that the jury didn't deliberate and the jury didn't answer some questions. The jury didn't deliberate on all the elements and find him guilty or not. That's absolutely true. I would submit that there were serious issues with the substance of the special interrogatories, if those are the... Because they do not represent the only issues that the jury had to concern. Well, that's why I sound puzzled that you answered Judge Wynn's question, that all it is is just for the district court judge to go back and say the verdict. No, you had a jury trial and the jury has to do that. And it has not done so. I thought that was your argument. Well, it certainly is. I simply don't want to be disingenuous with the court. It's not disingenuous. I don't think you're being disingenuous. I thought you were saying that you wanted a jury and the jury had to make a general finding of guilt, and it did not. I do think so. So if it has not, and if we agree with you, you would want, I don't think, just the judge to come back and say, oh, well, the jury found it, now I'm going to find it now. No, I certainly wouldn't want that. That's what you suggested by your answer. And I understand, Your Honor. And I think my miscommunication is that I don't want to... You didn't miscommunicate. That's what you asked us to do. That's what you said. You said the judge did not say you were guilty. Right. You didn't say anything about you wanted a jury trial to say that he's guilty. So you didn't miscommunicate. You invited that error. That's the way you set this up and agreed. You say, jury's okay to answer these questions right here. And then at the end of it, judge will simply say, that's enough. You're guilty. Isn't that what you just argued? Yes, Your Honor. I heard everything about you wanted to go back to the jury and hear the jury say he was guilty. Well, except insofar as the questions that were asked of the jury were insufficient. Exactly what you asked for. No, Your Honor. They were not what I asked for. You didn't ask for anything else. I asked the judge to... And you agreed to those. Your Honor, I asked the judge to make specific instructions with regard to specific intent as to item number one. And I asked him to confirm the issue with regard to constructive possession as regards item number two. And... I'm assuming that you entitled to specific intent. Absolutely. And that's an issue of law for this court to determine. That'll be determined in the other issue. So if that goes by the wayside, then that's nothing. Well, I have to make both arguments because as you note, if I lose on one, I've still got the other that I've got to deal with. I do believe that there is an argument as to item number two, vis-a-vis the prohibition on impeachment questioning of the government's witnesses that addresses item number two as well. But if I could just go back because I think... The court is correct that as counsel for Mr. Ramirez-Castillo, it is clear from the record that the judge says, so we'll ask them these two questions and then depending on their answers to those questions, I will find as a matter of law. And that is proper. That can be done. The problem... But before you beat yourself up on it, you need to look at what... Maybe we need to go to other issues in the case. I mean, your client has two items in his pocket. He's a prisoner. He has... And clearly sharp items in there. And he's trying to explain what these so-called homemade items. And you're saying you need to show some specific intent. He intended to use these as a weapon. Well, as to number one... And I think the other side says, no, you don't need specific intent. You're in prison with a sharp object in your pocket. You say, if anybody would attack me, I'd use to defend myself. That's good enough. As to item number one, our argument is that there is a specific intent requirement and the government disagrees with us about that. As to item number two, that was not on Mr. back in his dorm and was discovered after the pat down that led to the discovery of item number one. But if the court would like me to address the issue of the specific intent argument, the... What is item number one? Item number one was found on Mr. Ramirez-Castillo's... What does it look like? What is it? Sure. It looks like about a three and a half inch pencil, broken off pencil. And where the lead ought to be, there's a piece of metal that comes out of it that's sharpened to a point. And that piece of metal is lashed to the pencil with some string. And it probably is lashed at about an inch deep into the pencil shank. So it stands to reason that the person who patted him down and pulled it off of him thought, looks like a weapon to me. And that was never challenged. Are prisoners allowed to carry those guns? Nope. And your honor, he clearly has contraband and throughout the pendency of the case, before trial, during trial, he always conceded that what he had was contraband. Always. Under A2, he always conceded that he was not entitled to possess this item irrespective of its purpose. Well, you know, the 1791 calls it anything that threatens the order and security of the peaceful management of a Bureau of... A gun would be called contraband. A gun is certainly a weapon and it is a specifically itemized piece of contraband under the statute that falls under, I believe, D1E maybe. The government's contention is that Mr. Ramirez-Castillo's tool, which is what we called it throughout the trial because that's what the evidence suggested he had it for. And frankly, I wouldn't have believed it if I hadn't seen it with my own two eyes. The government's contention is that it falls under D1B, which is the five-year cap for possession of a weapon or item used or item intended or possessed as a weapon. And the indictment in the case lists possession of contraband to wit, a homemade weapon. And our argument all along has been that for a homemade item to qualify as a weapon, it must have been intended as a weapon. And there's extensive evidence on the record that item number one was not intended as a weapon. Let's parse that out. Let's cut across the field in your argument. The statute says it can be a weapon or something, right? Yes. That's in the disjunctive. Yes. Correct. Does it make a distinction between weapons that are homemade or weapons that were factory made? No. But where do you get this additional element of specific intent just because you add homemade to weapon? I get it from U.S. vs. Rodriguez, the case out of the Seventh Circuit, I believe, that indicate that- It's the finished product that defines it, not what your intent is. I don't care. If your intent was to build a spaceship, but you came up with a weapon, it's a weapon. But the statute uses the word intended as a weapon. So I think that, as Rodriguez says, transmutes the statute into a specific intent statute with regard to those items which could be more than one thing. I mean, the fact is that a pencil can be used as a weapon. It doesn't become a weapon until it's intended as a weapon. Exactly. But the homemade aspect of it, that, I don't know. I think that's rather superfluous to put that in. But that's up to the government in terms of how they write their charges. But I don't think that adds to specific intent. It's a weapon, right? And it's in the fabrication. If you fabricate a weapon, what difference does it make in terms of intent would go to a weapon? Well, we have- As you described it, that's a pretty clear weapon, isn't it? But it's not clearly a weapon based on the evidence provided at trial, that this gentleman was using this item as a tool to poke holes. It was an awl. He was using the tool to poke holes in the soles of shoes and then lash the tops of shoes to the bottoms of shoes. It's the most absurd argument in the world, except that it happens to be true. And it happened to be presented to the jury with physical evidence that was provided on the morning of trial by the Bureau of Prisons to Mr. Ramirez Castillo. And you're relying on Rodriguez for your position? Is that the case? Yes, Your Honor. Okay. Well, in Rodriguez, the defendant there was actually charged with possession of, quote, an object designed or intended to be used as a weapon. That's right. Here, the defendant was not charged in that manner. Isn't that a fatal flaw in your argument? No, Your Honor, because again, I think that the use of the term handmade takes this out of the, you know, it's not a gun. It's not a knife. It's not a slingshot. It's not an item that has no purpose other than as a weapon. Homemade clearly indicates, when one makes a thing at home, one makes it with an intention. One makes it with a purpose. And if the purpose of this item was to, as mind-boggling as it may seem, to cobble shoes, then that is the thing that it is. It is an all. It could become a weapon undoubtedly. And Mr. Bianchi asked the defendant on the stand, if you were attacked, couldn't you have used this as a weapon? And he says, yes, I could. But that's a thing that didn't happen. Your argument would be, the logical extent of your argument is, if you're in prison and you work somewhere in sheet metal section, if you could get a 12-inch thin piece of sheet metal and make it into just like a knife and find a piece of wood and stick it in there, you'd have a 12-inch knife. And you'd say, oh, no, no, no, no. That's homemade. Even though it looks like a knife, acts like a knife, because it's homemade now, then if you come up with, well, no, I use this to pick things up when I'm working, then in other words, there's no proof? No, because I think that the judge could have found that this was a weapon as a matter of law. He declined to do that. The judge gave an instruction about what the definition of a weapon is. The weapon is a weapon because of what it's intended to be created as. And the government would have no trouble if there was a 12-inch knife, as you describe it, made homemade. It still would, I think, be very easy for the government to prove that it was intended as a weapon. But it's homemade. And the person's coming with an excuse for what they use it for. That's your argument. Well, and perhaps the record evidence would support that set of facts. I think it's unlikely in a prison. And I frankly think that my argument was unlikely. I didn't believe my client for over a year. And then I got, on the morning of trial, I got the shoes that had the holes and had the things sewn together. And that's where we found it. I see that my time is up. I don't know if I've satisfied your question. No, I think it, any further questions? No further questions. You reserved some time. Yes, sir. Well, when you come back, I do want you to discuss Rodriguez a little bit more because it seems like Rodriguez, basically, you had both of the alternatives under the statute presented. And the court says it couldn't tell which. Here, you only have the possession set forth. And the jurors specifically found that alternative. So I'm trying to determine how Rodriguez is applicable to this case. Mr. Bianchi? Thank you, Your Honor. May it please the court. Judge Winn, Judge Gregory, Judge Thacker, my name is Nick Bianchi. I'm here on behalf of the United States government. And there's two points I'd like to make. The first is, with regard to the verdict that was entered in the special verdict form, that all parties had a complete understanding, going into deliberations, what each answer on that verdict form meant in terms of the guilt or not guilt. I wouldn't go as far as innocence. The parties did, but the jury did not. Were there any stipulations read to the jury sufficient to meet all four elements of the crimes charged? There were not, Your Honor. I would say, obviously, every element that wasn't in there was conceded by both sides in the court's instructions to the jury. The court covered every element the government must prove. The jury didn't come back with any questions about those elements. So the judge, in his instructions to them, did provide every element that the government must prove. The court also, in a few other spots . . . In instructions, though. In instructions. In instructions. Those instructions will lead them to a deliberation and a finding of guilt at some point. Correct. You would agree, though, that that special verdict only gave a factual conclusion as to one element. As to one element. As to each exhibit. Those being the only contested elements in this case. So you're still lacking a finding as to the whole, as they say, the gestalt. That is taken . . . Even if you say stipulated plus the found one, they have to make a general verdict on the finding of guilt, don't they? They do, Your Honor, in terms of Rule 31. And, again, the district court gave them those elements. We think we presented evidence as to each of those elements during the course of this. Did the district court explain in the instructions to the jury . . . You said the elements, two of the elements, weren't contested. Where is that in the evidence for the jury? Well, it comes from the trial. The first element is that he was an inmate at a federal correctional institute. That obviously came out at trial and was never contested by the defense. The second element being that he possessed a prohibited object, specifically a weapon. That was an issue with the Exhibit 2, the one that was at the locker. That was put out there, and I don't think there's any issue as . . . There's no debate over whether his instruction on actual versus constructive possession was proper. So this took this out of the province of the jury. You were saying those elements. See, I'm having some difficulty. I'm following Judge Greger and Judge Thacker's questions. You know, there's something wrong here, but I can't quite . . . I'm getting there. When you enter a not guilty plea, every element is in contest, and the burden is on the government to prove it beyond a reasonable doubt. If the other side concedes it, that gives evidence upon which the jury can then consider, or the court could probably direct. I direct you to find this element, that this is there. But just like in a silver case, a propounding case of a will, you can get up and say, yeah, everybody can agree, but in the old days, you had to go and hear that jury say it. I think in a criminal case, I'm beginning to believe a jury has to at least say yes to the elements, even if the other side says it. Don't you think so? I mean, in a criminal case, doesn't a jury . . . you can't take it from the jury, can you, the fact finders? No, you cannot. So the other side can get up and say, I'm guilty as daylight, and the jury could still come back and say, not guilty. Right. Absolutely. The jury would still go back and look at the elements as charged by the district court and go through those and make sure that all of those have been met. Unless the court instructs the jury that you are instructed to find that this element here has been satisfied. Correct. And that was not done, was it? I don't believe that was done in Judge Blatt's instructions, Your Honor. Isn't that a problem there? It creates a problem, but I think . . . and again, obviously going back, we would have done this a lot differently. The appellant initially brought up the subject of a special verdict form. The government actually, on page 74 of the JA, suggested that the verdict form say . . . it should say guilty or not guilty as to Exhibit 1, and then guilty or not guilty as to Exhibit 2. Because that's what the jury is supposed to find. Right. The defendant has not waived his right to a jury trial. Correct. The district court then gave a response as to what it was going to do, and then when he said, quote, does that suit you, Ms. Blazer, the answer was, that would be just fine, Your Honor. So again, it wasn't done the way we would have liked it to be done. I think both parties wish we could go back and change it, although that would arguably . . . The way the Constitution and the rules in the jury system require it to be done. Correct. So . . . Your Honor, I think . . . Why isn't the government joining this argument to say it should go back? Because it has to, doesn't it? I think if you look at the verdict, the question becomes, does it shock the conscience or is it egregious enough to do it? That's not the standard. I don't have to shock the conscience at all. I mean, the Supreme Court says in Galden, the Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged. Correct. And that didn't happen here, did it? Every element was given to the jury. The words guilty and not guilty were not on the verdict form. Which is required. Which is. Think about this. Yes, Your Honor. If a defendant stands up in a court and says, Your Honor, I plead guilty, you can't just walk out, he then has to make findings on the record of the nature of the plea. He's got to find his providence. Even when he says, I'm guilty. What you're saying is he's saying these elements are satisfied doing trial. And no inquiry has been made as to, well, are you certain you want to say this is satisfied or this is done? None of that happens. And I'm just saying in terms of what's going on here. Of course, it all is satisfied if you just have the jury do what you're supposed to do. It says you only have to do the elements. You say guilty, not guilty. Correct. That would have been. That's what you wanted. And I understand you argued for it, but you didn't get it. And so then the question that comes to my mind, does invited error apply to a criminal case? Our position is that it does, Your Honor. And what is, give me something to go with that other than just your position. Your Honor, I apologize. We did cite both United States versus Jackson and United States versus Les Peer, which is a 2013 case. And what we cited Les Peer for was that recognizing an invited error would seriously undermine confidence in the integrity of the courts. So we think invited error, there is a history. It has been applied in the criminal context. I don't think it's any question that invited error can apply in the criminal context, but the problem is this. This is an invited error. The court said that's what they're going to do. And defense said, okay. They didn't invite it. The court, sua sponte, came up with this. So it can't, invite means exactly what it is. I invited this concept. I broached it. I insisted. I urged. Here, no. I just capitulated to the court's sua sponte suggestion. And what you did was you allowed yourself to be talked out of, not I don't know whether you or not, but you allowed yourself to be talked out of what was absolutely required. That is a finding of guilt. And when you allowed yourself to be talked out of it, you got to live with that. And defense counsel said, okay, Judge, if that's your grand idea, I'll go with it. But that's not inviting it. That's just conceding. That's different. I understand it would be a clear case of invited error if appellant had proposed the jury verdict form itself and said, Judge, let's use this form. So, yeah. Right. Otherwise, the court said, they had said, this is a general verdict form. And said, this is fine. That's invited. But they just said, listen, for this counsel, if I'm correct, let's have a special verdict on the question of possession in one, weapon in the other one. And then let's get that element honed down to that. That's fine. But it still doesn't relieve the responsibility to find guilt on every element and come to the conclusion of guilt or innocence. And that's what I'm saying. I just don't see how the government has a real meritorious position but to concede that we have to do that here. Well, Your Honor, and again, the verdict form clearly just addresses the one issue as to each exhibit. One element. One element, that is. That while the others weren't stipulated within the jury instructions, all parties agreed, this is the crux of the case as to each exhibit. Is there a difference between exhibit one and exhibit two in terms of the elements? The other side says specific intent was required for the exhibit. No, we don't believe there's any difference in either. Their position is that specific intent is required for exhibit one, which if the court to focus on that, you know, disregarding the verdict form issue itself, we think even if this court said, appellant, you're correct, there should have been a specific intent argument as to exhibit one, there clearly wasn't one necessary for exhibit two. So with regards to the jury instructions, we don't believe there was error with regard to the intent portion of it. And even if there was, it would be harmless because all parties agree that intent wasn't required for exhibit two, the one in his locker. Why did you add homemade to the charge? Your Honor, I couldn't tell you. I think I've done a number of these cases. I get tasked with handling the cases out of the one prison that our branch office covers. You know, as we put in there, it's to put on notice of what we are charging them with having. Was there any question of what it was, the object was in this case? I don't believe so. That's the one they found on him, correct? Well, in his locker, he had... No, the locker was possession was the question, but the one they found on him was the issue of whether or not it was a weapon. Correct. There was no question of notice, which one you're talking about. It's the one they found on him. Sir, this is the one we found on you. It is a weapon. Why did you add homemade? You almost talked about invited. You invited counsel to make, I think, a rather, I won't say creative, but what I would say in fairness there, a meritorious argument about when you say homemade, is that the intent to make a weapon when you say homemade? When you add the word, every time you add a word, you perhaps run the danger of adding something to your element. What did homemade add to and mean to that and put it in the front of it as an adjective for the noun weapon? Again, the thought process was to put him on notice of what he was being charged with because the indictment said two homemade weapons. That included the one in the locker. He also had other contraband in that locker that could arguably have been considered weapons that was sharpened plastic and some other tools that were merely discarded. So it was- So you really wanted to bring that element there to distinguish that you intended this to be a weapon? No, it was- I would like to meet you, though. I don't believe that. That wasn't my position. It was, we believe it was sort of superfluous. But again, I realize that that opens the door, at least for them to make the argument. But I do think it is different from a gun or anything, you know, or manufactured weapons, as you mentioned earlier. So to separate those two. And again, a weapon is for offensive or defensive purposes because obviously within the prison context, you can't just say, oh, I wasn't going to use that for anybody. Again, I wasn't going out to stab anybody right now. I only had it in case someone comes after me. And that was, in my argument to the jury, it was going to the intent is to offensive or defense so that the jury understood he didn't have to have that weapon going to attack someone at the time he was caught with it. And he conceded that I would use it if my life was threatened, didn't he, Senator? Correct, that if someone came after him, he would use it to defend himself. Going back to the jury instructions, again, the district court told the jury every element that the government must prove beyond a reasonable doubt. While the record doesn't reflect it, this jury was not out very long. So it told them the government has to prove these elements beyond a reasonable doubt. It also said that the defendant comes into court clothed with a presumption of innocence, which requires you to acquit him unless the government proves to your satisfaction beyond a reasonable doubt that he's guilty. And on page 124, it said before that . . . How are they going to acquit him if they only get to answer one question? Well, there was only one question on the verdict form. I think the district court still instructed them that you have to find all of these elements beyond a reasonable doubt. And I think if there was confusion over that . . . How do we know they did? How do we know they did? You said they weren't out very long. So it doesn't take long to answer those two questions. No, but the district court also said you have to find all of the elements beyond a reasonable doubt. First, to find that one thing they found? No, in his instructions . . . That's all they got. All they have is that one thing. Sure, they could have, but we don't know. Right. I don't believe that, and again, in all honesty, it is just speculation. You have a tough case, don't you? I do, and I put myself in this position probably more . . . Sometimes when you have a tough case, you need to just acknowledge it's a tough case. Unless you've got a good answer to what I just said. This is really tough, and I admire you for the fact you want to try to represent your case, but it is what it is. No, it is absolutely a tough case, Your Honor. It's a position that the government put itself into, probably more so than Ms. Blazer feels she put herself into. Don't we have to have a new trial? You can't reconvene a jury now. No, you certainly couldn't do that. So if you feel it gets to that point, then yes, I don't think that you could send it back just for the district court to say . . . Make those findings, right? Correct. He can't make those findings for them. Again, the district court told them they had to make those findings. There were no questions presented to the court. It would just be . . . it's pure speculation, I would say. What is our review of this? Since it was not objected to, I guess it wasn't even recognized or sort of came up, how do we review this? As far as the verdict form, if it's . . . Hold on one second, Your Honor. I apologize. It seems to be more than just a verdict form. It really is going to an issue of whether in the first instance he was even properly found guilty. I mean, whether there's a judgment. That's really what it is. How do we review whether there is a judgment? Is it plain error or we can just review it? I mean, it either exists or not. Whether it's plain error or de novo. Your Honor, I don't believe that's the standard review. I'd have to check my brief to see if we address the specific standard. Would it be any different than if the jury came back and says nothing and then the judge just sentenced him? I don't follow as far as . . . What do you mean? The jury just comes back and says, well, we're going home. The judge says, well, I'm going to sentence you this evening. Would it be any different than if the jury comes back with just one element and the ultimate conclusion in both instances is there's no judgment? And I'm having a little trouble following that. So again, if a jury and not necessarily this case but any case . . . I'll get hung up on that. Just if the answer is there's no judgment, then what is the review? Your Honor, I don't have off the top of my head. I don't have a specific . . . Sounds like structural error, doesn't it? It wouldn't be plain error if you're . . . Correct. It would be structural error, wouldn't it? I believe so, Your Honor. Again, it's a tough case. I don't believe the jury went into those deliberations thinking, I can't get in there, but thinking we'll answer these questions and then he'll send us back to say whether he's guilty or not guilty. I feel like they knew exactly going into it what the answers to those questions were. Certainly . . . Good news for you, it's not a tough case to retry, is it? No, it took probably all of about four or five hours, I think. Now you've got everything all there and it all goes right back. I would prefer not to have to do it again, but it's . . . After you get past those double jeopardy arguments. Well, I don't know that those attach. There was no finding of mistrial, was there? If the conviction itself is reversed and remanded, I think we do start all over. What's their conviction? Well, Judge Block clearly said it's . . . I don't want you to answer those, but I'm just saying, don't let Judge Wynn lull you into thinking this might be a cakewalk. There'll be some legal questions that you got to answer. No, and we are certainly . . . But I just . . . No, that is an issue . . . Don't pay any attention to me, I'm just mentioning things. Well, I will let you know that is an issue we did actually discuss going into today. All right. Okay. I think I've said all I can say. I think we understand your argument, counsel. Thank you, Mr. Bianchi. Ms. Blazer, do you have anything further from the court? Your Honor, I think that it would be unnecessary for me to do more than simply answer Judge Wynn's question if he still wants me to answer that question. That's up to you. Judge Wynn has given you the option. Do you have anything further to say? I think that . . . Do you have something you want to say? No, I think that the court has said all that needs to be said. Thank you. I thought so. All right. We're going to come down, Greek counsel, and proceed to our final case for the day.
judges: Roger L. Gregory, James A. Wynn, Jr., Stephanie D. Thacker